## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| ROBERT HOSSFELD, an individual, on his own behalf and on behalf of all others similarly situated, | §<br>§<br>§<br>§ | No. 1:26-cv-1076 |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | |
| DICELLO LEVITT LLP, an Ohio limited liability partnership, and TORT INTAKE PROFESSIONALS LLC, a Wyoming limited liability company, | §<br>§<br>§<br>§<br>§ | |
| Defendants. | § | |

## CLASS ACTION COMPLAINT

Plaintiff Robert Hossfeld ("Hossfeld" or "Plaintiff") brings this class action complaint against Defendants DiCello Levitt LLP ("DiCello Levitt"), and Tort Intake Professionals, LLC ("TIP," and together with DiCello Levitt, "Defendants"), to stop Defendants' practice of making unsolicited telemarketing calls to telephone numbers listed on the National Do-No-Call Registry, and to obtain redress for all persons injured by this conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### Nature of the Case

1.     Plaintiff, individually and as proposed class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") for unsolicited, telemarketing calls made by or on behalf of Defendants.

2.     Separately, Defendants' telemarketing violates Texas prohibitions against barratry

and solicitation. Various personal injury firms hired TIP to solicit prospective clients (in and outside Texas) via telemarketing.  Soliciting clients for attorneys via telemarketing violates Texas law. Tex. Pen. Code § 38.12(a)(2). Hossfeld and others who were "solicited by conduct violating Section 38.12(a) [] but who did not enter into a contract as a result of that conduct, may file a civil action" for a penalty of $10,000 and attorneys' fees under Tex. Gov't Code § 82.0651.

3. Plaintiff, individually, and on behalf of the class members, seeks an injunction and other equitable relief, and an award of statutory damages, and costs and reasonable attorneys' fees, to the members of the proposed classes.

**Parties**

4. Plaintiff Robert Hossfeld is a natural person and a resident of Texas. He is the subscriber of a residential telephone listed on the national Do Not Call list, on which he received numerous unsolicited telephone calls from Defendants.

5. Defendant DiCello Levitt LLP is an Ohio limited liability partnership, which lists its address with the Ohio Secretary of State as 8160 Norton Parkway, Mentor, Ohio 44060.

6. DiCello Levitt claims publicly that it has a strong reputation as one of the foremost consumer advocacy firms in the country and has numerous office locations across the country.

7. Defendant Tort Intake Professionals, LLC is a Wyoming limited liability company, which lists its address with the Wyoming Secretary of State as 10550 West Charleston Boulevard, Las Vegas, Nevada 89135.

8. TIP specializes in legal intake, call handling, and client acquisition, specifically for mass tort, sexual abuse, and personal injury law firms.

**Jurisdiction and Venue**

9.      This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants district courts original jurisdiction on all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States District Courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

10.      Moreover, the Court has diversity jurisdiction. Hossfeld is a citizen of Texas. DiCello Levitt is a citizen of Ohio. TIP is a citizen of Nevada. This Complaint alleges claims on behalf of a proposed class whose members include persons residing outside Ohio and Nevada, and who are not citizens of the same states as the Defendants (such as Hossfeld). The members of the proposed class are diverse from the Defendants. Hossfeld alleges, on information and belief, the aggregate of the amount in controversy in these class claims exceed the sum or value of $5 million and the total number of class members exceeds 100. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2).

11.      In addition, this Court has supplemental jurisdiction pursuant to 28 U.S. Code § 1367 over the claims brought under Texas law. Tex. Pen. Code § 38.12(a)(2) and Tex. Gov't Code § 82.0651 because this claim is so related to the TCPA claim that they form part of the same case or controversy under Article III of the United States Constitution.

12.      This Court has personal jurisdiction over the Defendants under Texas Civil Practice & Remedies Code § 17.042 because Defendants committed a tort in this state by directing their telemarketing to residents of Texas, including Plaintiff.

13.      Furthermore, Defendants knowingly and purposefully availed themselves to the State of Texas when they caused phone calls to be made to Plaintiff's phone with a "254" area

code, which is associated with the State of Texas.

14.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this District.

### The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227

15.    "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020).

16.    In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices. Pub. L. No. 102-243, (Dec. 20, 1991), *codified at* 47 U.S.C. § 227. *See also Mims*, 565 U.S. at 371 ("The Act bans certain practices invasive of privacy").

17.    The TCPA (via its implementing FCC regulations) prohibit calls to any number that is registered with the National Do-Not-Call Registry. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The TCPA provides a private right of action for damages and injunctive relief for such DNC violations. 47 U.S.C. § 227(c)(5).

18.    The National Do-Not-Call Registry allows residential telephone subscribers to register their telephone numbers with the Registry to indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing of the Registry "must be honored indefinitely or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

19.    Defendants are liable under the TCPA. The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot.*

*Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013). "Vicarious liability under the TCPA is governed by the federal common law of agency." *Callier v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736, 743 (W.D. Tex. 2023). *Cf. id.* at 746 (describing TCPA liability for ratification, where Defendants "knowingly accepted the benefits that flowed from the call campaign in the form of increased business"). *See also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) ("no cause to question" precept that "under federal common-law principles of agency, there is vicarious liability for TCPA violations"); Restatement (Third) of Agency (2006) §§ 2.01, 2.03, 4.01 (vicarious liability "may be established by express authorization, implicit authorization, or ratification").

20.    The TCPA reflects Congress's intent to preserve the social norms that Americans answer calls to their telephone numbers. Abusive and deceptive robocalls like those used by Defendants are a scourge on modern society, and represent an increasing threat to American's continued use of the telephone system, which relies on the custom that people generally answer telephone calls to their telephone number. The TCPA's legislative history recognized the continued proliferation of telemarketing, left unchecked, would undermine that custom. "Unwanted calls are tainting the wanted ones and make us cringe at the thought of answering the telephone at night. [] [I]t's a classic case of the bad apples spoiling the whole barrel." 137 Cong. Rec. H11,312 (daily ed. Nov. 26, 1991) (statement of Rep. Cooper); 137 Cong. Rec. H11,310 (daily ed. Nov. 26, 1991) (statement of Rep. Markey) (TCPA intended to protect privacy "before our home telephones become the receptacles of junk calls in the same way that junk mail often

inundates our mailboxes"). The situation has greatly worsened since the TCPA was first passed. Unless the situation improves, Americans will permanently acclimate to the telephone call as a fundamentally untrustworthy medium for free speech and stop answering unidentified telephone calls, frustrating the legislative intent behind the TCPA.

**Defendants' Illegal Telemarketing Calls**

21.     DiCello Levitt hires and uses telemarketers (including TIP) to solicit personal injury clients from across the country (including Texas) through aggressive outbound telemarketing campaigns.

22.     Defendants use illegal telemarketing campaigns to promote legal services. TIP derives income by procuring leads for its clients, including DiCello Levitt, so these telemarketing campaigns are conducted for Defendants' benefit and on their behalf. Defendants initiate telemarketing calls to telephone numbers on the Do-Not-Call registry.

23.     Defendants systematically fail to honor the national Do-Not-Call registry. Defendants do not have express consent to call telephone users whose telephone number is on the Do-Not-Call registry.

24.     Nonetheless, Defendants made, and continue to make, these telemarketing calls to individuals nationwide without their consent. Defendants have knowingly and actively accepted money generated by illegal telemarketing calls, and paid and/or approved payment of commissions to telemarketers for such calls.

25.     DiCello Levitt is legally responsible for ensuring it and/or its third-party telemarketers, including TIP, complied with the TCPA, even if they did not make the calls themselves. DiCello Levitt is vicariously liable for TIP's TCPA violations. There is no material distinction between telemarketing calls made by DiCello Levitt and/or by call centers who are

technically third parties, such as TIP.

26. On information and belief, Defendants and the telemarketers used for the telemarketing campaigns alleged in this complaint were and are at all relevant times Defendants' actual agents, ostensible agents, conspirators, partners, alter egos, joint venturers, and/or employees, and the acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of Defendants.

**Plaintiff's Individual Allegations**

27. **Hossfeld's DNC Number:** Hossfeld's telephone number (the "Number")—(254) XXX-4157—has been registered with the National Do-Not-Call Registry since January 29, 2020. At all times relevant to this complaint, the Number has been used for personal, family, and household purposes: this is a residential number.

28. **Defendants' Telemarketing Campaign:** Defendants or their telemarketers made a series of telemarketing calls to the Number where the caller identified themselves as "Tort Intake Professionals" and said they were "calling on behalf of DiCello Levitt law firm."

29. Tort Intake Professionals called the Number on behalf of DiCello Levitt law firm on January 27, 2026, February 4, 2026, February 25, 2026, and March 6, 2026, using the outbound telephone number (725) 224-8755, and again on April 1, 2026 using the outbound telephone number (725) 231-8299. TIP's calls on behalf of DiCello Levitt to the Number displayed "Tort Intake Professionals" as the caller ID.

30. Plaintiff did not answer any of Defendants' calls to the Number. On March 6 and April 1, 2026, Defendants left voicemail messages identifying themselves as Tort Intake Professionals calling on behalf of DiCello Levitt.

31. **Defendants' Telemarketing Scheme:** On information and belief, Defendants participated in a common scheme and/or used a common script developed to help TIP generate leads for DiCello Levitt.

32. DiCello Levitt knew that TIP was making outbound telephone calls on its behalf. TIP offers outbound telemarketing services to law firms on its website, which claims that TIP prioritizes "ethical intake practices" to ensure that telephone calls and text messages made for its clients comply with the TCPA.

33. TIP also provides intake services: scheduling consultations, facilitating initial client meetings, providing preliminary legal guidance, capturing and organizing case details, such as client contact information, case specifics, and incident details, and working closely with its clients to develop tailored intake processes and questionnaires that align with its clients' specifications. TIP also provides its clients post-retention services: including comprehensive data management and reporting, and helping law firms maintain accurate records, track case progress, and generating reports. On information and belief, DiCello Levitt engaged TIP to provide these services for the telemarketing campaign(s) which called the Number.

34. DiCello Levitt controlled the manner and means by which the scheme was accomplished through interim instructions. On information and belief, DiCello Levitt (1) gave frequent feedback to TIP before, during, and after retention of leads generated by TIP; (2) had access to or controlled TIP's call records; and (3) had the ability to collect audio recordings of TIP's outgoing calls on demand, and routinely reviewed such recordings.

35. On information and belief, DiCello Levitt authorized TIP to make calls on behalf of DiCello Levitt and using its name, including the TCPA violations alleged above in which identified itself in the voicemail messages as calling on behalf of DiCello Levitt.

36.     On information and belief, DiCello Levitt ratified TIP's TCPA violations by accepting the leads generated by TIP's telemarketing campaign, and continuing to pay TIP commissions while willfully ignoring evidence that their telemarketing calls violated the law.

37.     Hossfeld did not provide any telephone numbers to Defendants or their agents for any purpose whatsoever as he never had a business relationship with them. Defendants and their agents did not otherwise obtain Hossfeld's prior express consent to make telemarketing calls to the Number. Hossfeld was not a business associate, customer, or other person having an established relationship with Defendants, Defendants did not call to collect an existing obligation, and Hossfeld did not request Defendants to call (and, indeed, he was not aware of the Defendants prior to these calls). Defendants never had valid consent to call the Number. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (requiring "a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller").

38.     Defendants were aware, or should have been aware, that Plaintiff never provided consent to receive their telemarketing calls, and that Plaintiff's number was registered on the National Do-Not-Call List.

39.     Defendants' unsolicited calls caused Plaintiff harm. In addition to using the cellular data, storage, and battery life of the phone associated with the Number, Hossfeld suffered invasion of privacy, aggravation, annoyance, frustration, distraction, forcing him to divert attention away from his work, home life and other activities, inconvenience, wasted time, risk of future harm, and violation of his substantive rights under the TCPA to remain free of unsolicited calls.

## Class Action Allegations

40.     **DNC Class Definition:** Plaintiff brings this Complaint against Defendants,

Class Action Complaint                    9                    No. 1:26-cv-1076

pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the following Class (the "DNC Class"):

> All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of Plaintiff's original complaint through the date the Court certifies the class.

Excluded from the DNC Class are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise and amend this class definition based on facts learned during discovery.

41.    **Texas Class Definition:** Plaintiff also brings this Complaint against Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the following Class (the "Texas Class"):

> All persons who received a telemarketing call by or on behalf of Defendants while residing in Texas from two years prior to the date of Plaintiff's original complaint through the date the Court certifies the class.

Excluded from the Texas Class are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise and amend this class definition based on facts learned during discovery.

42.    **Numerosity:** The exact number of members of the Classes is unknown and is not available to Plaintiff at this time, but such information is readily ascertainable by Defendants and

their agents' records. Given the size of Defendants' business, the Class members number at least in the hundreds. The Classes are so numerous that joinder of all members is impractical. Plaintiff alleges that there are at least forty members of each Class.

43.     **Commonality:** Plaintiff and the members of the Classes share common experiences receiving calls by or on behalf of Defendants. They received multiple, incessant, uninvited calls for the purposes of marketing the services of DiCello Levitt to their residential telephone numbers.

44.     **Predominance:** In addition, common questions of fact and law exist as to all Class members and predominate over the questions affecting only individual members of the Classes. Identification of the individuals who qualify as a member of a Class will be sufficient to establish liability to the class member. The predominant common questions include:

a.  Whether Defendants and/or their agents made telephone calls to members of the DNC Class whose telephone numbers were registered with the national Do-Not-Call registry, and/or instituted and maintained procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d) for making telemarketing calls;

b.  Whether Defendants are vicariously liable for any calls by their agents and/or sub-agents;

c.  Whether the phone calls constitute "solicitations" as defined by 47 U.S.C. § 227(a)(4);

d.  Whether violations were willful or simply negligent;

e.  Whether Defendants and/or their agents had legally effective consent to place telemarketing calls to Plaintiff and Class members;

f.  Whether TIP made telemarketing calls to Texas Class members which solicited clients for DiCello Levitt and other law firms;

g.  Whether Plaintiff and Class members are entitled to damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiff and Class members are entitled to treble damages;

h.  Whether Plaintiff and Class members are entitled to injunctive relief and attorneys' fees and costs.

45.    **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff is not different in any relevant way from any other members of the Classes, and the relief they seek is common to the Classes.

46.    **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes: Plaintiff's interests do not conflict with the interests of the other Class members. Plaintiff has retained counsel competent and experienced in complex class actions, including class actions arising under the TCPA and other consumer protection laws, and they intend to prosecute this action vigorously.

47.    **Predominance and Superiority:** The Classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual Class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendants' misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

48.    **Generally Applicable Policies:** This class action is also appropriate for

certification because Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each class as a whole. The policies of the Defendants challenged herein apply and affect members of each class uniformly, and Plaintiff's challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiff.

49.    **Injunctive Relief is Appropriate:** Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and the members of the Classes for which they have no adequate remedy at law.

**FIRST CAUSE OF ACTION**
**(Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(c)**
**Against All Defendants By Plaintiff, Individually, and on Behalf of the DNC Class)**

50.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

51.    Defendants are "persons" as defined by 47 U.S.C. § 153(39).

52.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action for injunctive relief and statutory damages of $500 per violation. 47 U.S.C. § 227(c)(5). Where "the court finds that the Defendants willfully or knowingly violated the regulations prescribed under this subsection," it "may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount [otherwise] available . . ." *Id*.

53.    The FCC's TCPA regulation provides that "[n]o person or entity shall initiate any telephone solicitation" to a "residential telephone subscriber who has registered his or her

telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). This prohibition also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

54. On information and belief, Defendants and/or their agents routinely make outgoing calls to residential and cellular telephones in the regular course of their telemarketing campaigns alleged above. Defendants violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other DNC Class members.

55. Defendants' violations are willful because Defendants knew that Plaintiff and DNC Class members had not given prior express consent to receive telemarketing calls made to telephone numbers placed on the Do Not Call List and that Defendants called such telephone numbers, or benefitted from calls on their behalf. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

56. Plaintiff, on his own behalf, and on behalf of the other DNC Class members, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants.

**SECOND CAUSE OF ACTION**
**(Violation of Tex. Gov't Code § 82.0651 Against All Defendants**
**By Plaintiff, Individually, and on Behalf of the Texas Class)**

57. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

58. Soliciting clients for attorneys via telemarketing violates Tex. Pen. Code §

38.12(a)(2). ("A person commits an offense if, with intent to obtain an economic benefit the person [] (2) solicits employment, either in person or by telephone, for himself or for another"). *Cf.* Tex. Pen. Code § 38.01(11) ("'Solicit employment' means to communicate [] by telephone with a prospective client [] concerning professional employment within the scope of a professional's license, registration, or certification arising out of a particular occurrence or event, or series of occurrences or events, or concerning an existing problem of the prospective client within the scope of the professional's license, registration, or certification, for the purpose of providing professional services to the prospective client, when neither the person receiving the communication nor anyone acting on that person's behalf has requested the communication"), (12) ("'Professional' means an attorney").

59.    On information and belief, DiCello Levitt paid TIP a commission or other such payment for leads retained via the telemarketing alleged above. Paying or offering "a person money or anything of value to solicit employment" and accepting or agreeing to accept "money or anything of value to solicit employment" also violates Tex. Pen. Code § 38.12(a)(4), (6).

60.    TIP intended to obtain an economic benefit by telemarketing to Hossfeld and other Texas Class members, and receiving a commission or other payment from DiCello Levitt for leads that they procured via such telemarketing.

61.    Hossfeld and others who were "solicited by conduct violating Section 38.12(a) [] but who did not enter into a contract as a result of that conduct, may file a civil action" for a penalty of $10,000 and attorneys' fees under Tex. Gov't Code § 82.0651.

62.    Plaintiff, on his own behalf, and on behalf of the Texas Class members, seeks to recover civil penalties, as well as all reasonable costs under Tex. Gov't Code § 82.0651 against Defendants.

**WHEREFORE,** Plaintiff prays that the Court enter judgment and orders in Plaintiff's favor and against Defendants Tort Intake Professionals and DiCello Levitt as follows:

a.    An order certifying the Classes, directing that this case proceed as a class action, and appointing Plaintiff and his counsel to represent the Classes;

b.    Statutory damages as provided under 47 U.S.C. § 227(c)(5) against Defendants in favor of Plaintiff and the DNC Class, including trebled damages for willful and knowing violations;

c.    Statutory damages as provided under Tex. Gov't Code § 82.0651 against Defendants in favor of Plaintiff and the Texas Class;

d.    Reasonable and necessary attorneys' fees as provided under Tex. Gov't Code § 82.0651 against Defendants in favor of Plaintiff and the Texas Class;

e.    Injunctive relief under 47 U.S.C. § 227(c)(5) against Defendants in favor of Plaintiff and the DNC Class;

f.    Such other and further relief as this Court may deem appropriate.

Dated: April 27, 2026

By:  s/Ethan Preston
    Ethan Preston (24091084)
    ep@eplaw.us
    PRESTON LAW OFFICES
    4054 McKinney Avenue, Suite 310
    Dallas, Texas 75204
    Telephone: (972) 564-8340
    Facsimile: (866) 509-1197


    Scott D. Owens  (pending pro hac vice admission)
    scott@scottdowens.com
    SCOTT D. OWENS, P.A.
    2750 North 29th Avenue, Suite 209A
    Hollywood, FL 33020
    Telephone: (954) 589-0588
    Facsimile: (954) 337-0666

    *Attorneys for Plaintiff Robert Hossfeld, on his own behalf, and on behalf of all others similarly situated*

**<u>JURY TRIAL DEMAND</u>**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: April 27, 2026

By:  s/Ethan Preston
 Ethan Preston (24091084)
 ep@eplaw.us
 PRESTON LAW OFFICES
 4054 McKinney Avenue, Suite 310
 Dallas, Texas 75204
 Telephone: (972) 564-8340
 Facsimile: (866) 509-1197

 *Attorneys for Plaintiff Robert Hossfeld, on his own behalf, and behalf of all others similarly situated*